1   Jennifer Hadley Dioguardi (#018380)
    Daniel W. Huitink (#026276)
2   **SNELL & WILMER L.L.P.**
    One Arizona Center
3   400 E. Van Buren
    Phoenix, AZ  85004-2202
4   Telephone: (602) 382-6000
    jdioguardi@swlaw.com
5   dhuitink@swlaw.com
    Attorneys for Defendants Arizona State Credit Union, David
6   E. Doss, Dominic Mertyz, Western Auto Recovery, Inc.,
    Jeffrey Billings, and John Doe 1, Tow Truck Driver

7

8                  **IN THE UNITED STATES DISTRICT COURT**

9                       **FOR THE DISTRICT OF ARIZONA**

10

    Allan J. Ricks,                          No. 2:10-cv-01543-ROS
11
                    Plaintiff,               **DEFENDANTS ARIZONA STATE**
12                                           **CREDIT UNION, DAVID E. DOSS,**
    v.                                       **DOMINIC MERTYZ, WESTERN**
13                                           **AUTO RECOVERY, INC., JEFFREY**
    Arizona State Credit Union; David E.     **BILLINGS, AND JOHN DOE 1, TOW**
14  Doss, individually, and in his official  **TRUCK DRIVER'S MOTION TO**
    capacity as PRES/CEO of Arizona State    **DISMISS THE COMPLAINT**
15  Credit Union;                            **PURSUANT TO FEDERAL RULE OF**
                                             **CIVIL PROCEDURE 12(b)(6)**
16  Dominic Mertyz, Agent, Arizona State
    Credit Union in his official capacity,
17  Repossession Specialist, and or his
    successor,
18
    Western Auto Recovery, Inc.; Jeffrey
19  Billings/individually, and in his official
    capacity as Owner, Western Auto
20  Recovery, Inc.;

21  John Doe 1, Tow Truck Driver,
    Individually and in his official capacity
22  as Driver, Western Auto Recovery, Inc.;

23  Gust Rosenfeld; Law Firm; Madeleine
    C. Wanslee; individually, and in her
24  official capacity as Agent;

25  John/Jane Does, (Investors) 1-5,000, *et
    al*, Real Parties in Interest,
26
                    Defendants.
27

28

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendants Arizona State Credit Union

2    ("ASCU"), David E. Doss, and Dominic Mertyz (collectively, "the ASCU Defendants"),

3    and Defendants Western Auto Recovery, Inc. ("WAR"), Jeffrey Billings, and John Doe

4    1, Tow Truck Driver (collectively, "the WAR Defendants"), move the Court to dismiss

5    Plaintiff Allan J. Ricks's Complaint for failing to state any claim against them upon

6    which relief can be granted.  This Motion is supported by the following Memorandum of

7    Points and Authorities and all other matters of record before the Court.

8         DATED this 20th day of August, 2010.

9                                                SNELL & WILMER L.L.P.

10        By:    s/Daniel W. Huitink
                 Jennifer Hadley Dioguardi (#018380)
11               Daniel W. Huitink (#026276)
                 One Arizona Center
12               400 E. Van Buren
                 Phoenix, AZ  85004-2202
13               Attorneys for Defendants Arizona State Credit
                 Union, David E. Doss, Dominic Mertyz, and
14               Western Auto Recovery, Inc., Jeffrey Billings,
                 and John Doe 1, Tow Truck Driver

15

16              **MEMORANDUM OF POINTS AND AUTHORITIES**

17   **I.    INTRODUCTION**

18        Plaintiff commenced this action against Defendants after he defaulted on a loan

19   and the vehicle securing the loan was repossessed and sold.  Though the Complaint is

20   often unclear, this action seems predicated on Plaintiff's claims that the loan was invalid

21   and that the repossession and sale of the vehicle violated federal and state law.   As set

22   forth more fully in the balance of this motion, Plaintiff's claims should be dismissed, with

23   prejudice, for failing to state any claims upon which relief can be granted.

24   **II.   FACTS**

25        On January 9, 2009, Plaintiff and ASCU entered into an open-end credit

26   agreement where ASCU advanced Plaintiff $19,787.50.  Compl. ¶ 1; Ex. A.[1]  The loan is

---

[1] Plaintiff's Complaint uses paragraph numbers on pages 1 and 2 and clause numbers
27   thereafter.  The references in this motion are to facts asserted in the clauses of the
     Complaint. (E.g.: Compl. ¶ 7 refers to Clause 7 on page 3 of the Complaint, not
28   paragraph 7 on page 2).

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

governed by a written contract signed by Plaintiff entitled "Open-End Plan Signatures Plus" (the "Agreement"), secured by a 2008 Nissan Sentra automobile. <u>Id</u>. The Agreement requires Plaintiff to make monthly payments and has a fixed, annual interest rate of 4.75 percent. <u>Id</u>. Section 12 of the Agreement defines a default, in pertinent part:

> You will be in default if you break any promise you made under the Plan . . . . You will be in default . . . if something happens we believe may substantially reduce your ability to repay what you owe. . . . You will be in default  . . . if anything happens that significantly affects the value of the property [given as security] or our security interest in it.

<u>Id</u>. In the event of default, Section 13 provides:

> [T]he Credit Union has the right to take possession of any property given as security under the Plan, without judicial process, if this can be done without breach of the peace. . . . If the property is a motor vehicle . . . you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. . . .

<u>Id</u>.

In January 2010, Plaintiff requested to skip his January 2010 monthly payment. <u>Id</u>. ¶ 4; Ex. B.  On January 15, 2010, ASCU advised Plaintiff it had processed his request and his next scheduled payment would be February 26, 2010.  <u>Id</u>. ¶ 5; Ex. B.

After Plaintiff requested to skip a payment,[2] Plaintiff sent ASCU a letter boldly titled "**DISPUTE OF DEBT**." <u>Id</u>. ¶ 6; Ex. C at 1.  In the letter, Plaintiff "dispute[d] the validity of the alleged debt in its entirety," referred to ASCU as an "*alleged* creditor," asserted "rights in debt collection" under the Fair Debt Collection Practices Act ("FDCPA"), demanded ASCU produce "verified (sworn by affidavit) documentary evidence in validation/substantiation of the alleged debt," and stated ASCU's failure to comply with Plaintiff's requests would render the debt "invalid, a nullity, and unenforceable, and thereby repudiated in its entirety ab initio." <u>Id</u>. Ex. C at 1, 4.

---

[2] The letter is dated January 20, 2010, but it is unclear when it was sent. Clause 6 of Plaintiff's Complaint says it was sent January 26, 2010.  Plaintiff states in his February 8 and February 19, 2010 letters that it was sent January 20, 2010.  Ex. D.  Regardless, Plaintiff consistently states ASCU received the letter on January 28, 2010.  Compl. ¶ 6; Ex. D, G.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1   ASCU considered Plaintiff's correspondence a repudiation of the Agreement and

2   an event of default and, pursuant to the Agreement, hired WAR to repossess the vehicle

3   that served as security for the Agreement.  According to the Complaint, an employee of

4   WAR repossessed the vehicle "[d]uring the nighttime hours, under cover of darkness, of

5   January 28, 2010, or the early morning hours of January 29, 2010." Id. ¶¶ 23, 30; Ex. D.

6   On January 29, 2010, ASCU notified Plaintiff it had repossessed the vehicle and

7   would sell it to reduce Plaintiff's debt.  Id. Ex. B.  ASCU gave Plaintiff the opportunity to

8   cure his default and advised it would return the vehicle in lieu of sale if Plaintiff paid the

9   amount owed.  Id. Ex. B.  On February 8, 2010, Plaintiff sent ASCU a letter alleging it

10  had failed to respond to his "Dispute of Debt letter," violated the FDCPA and the Truth

11  in Lending Act ("TILA"), and committed "gross breach of contract."  Id. Ex. D.  On

12  February 11, 2010, ASCU's attorney, Madeleine C. Wanslee, sent Plaintiff a letter

13  informing Plaintiff the FDCPA did not apply to ASCU.  Id. Ex. F.

14  Rather than take the opportunity to cure his default, on February 19, 2010,

15  Plaintiff sent ASCU a letter rescinding his "chattel mortgage," which he claimed he

16  "already clearly did on January 20, 2010 (my Dispute of Debt letter)."  Id. Ex. E at 1.  On

17  March 31, 2010, ASCU notified Plaintiff that it had sold Plaintiff's vehicle for $9,600

18  and that Plaintiff owed a deficiency of $7,542.  Id. ¶ 37.  This lawsuit followed.

19  **III.   LEGAL STANDARD**

20  "To survive a [Rule 12(b)(6)] motion to dismiss . . . a complaint must contain

21  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

22  face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

23  Twombly, 550 U.S. 544, 570 (2007)).   "Although pro se pleadings are liberally

24  construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), a pro se plaintiff must still

25  satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)."  Gayden v.

26  Ariz. Dept. of Econ. Security, No. CV-10-0882-PHX-LOA, 2010 WL 2836925, at *2

27  (D. Ariz. July 19, 2010).  Thus, pleadings containing mere "'labels and conclusions,'"

28  "'formulaic recitation[a] of . . . elements,'" and "'naked assertion[s]' 'devoid of further

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    factual enhancement" are insufficient. Iqbal, 129 S. Ct. at 1949 (quoting Twombly,

2    550 U.S. at 555, 557).

3    **IV.**   **LEGAL ANALYSIS**

4           On its face, the Complaint asserts twelve causes of action.  Plaintiff's twelfth

5    cause of action, however, is simply a claim for damages.  Moreover, Plaintiff's third

6    cause of action is directed against Wanslee, who is not a party to this motion.[3]  As set

7    forth below, Plaintiff's remaining ten claims should be dismissed.

8         **A.**   **Plaintiff's Breach of Contract Claim**

9           Plaintiff's first claim apparently asserts ASCU breached the Agreement by

10   violating the FDCPA.  Compl. ¶¶ 6, 15.  Alternatively, Plaintiff asserts ASCU "did not

11   lend its capital, credit or its depositors['] money" in violation of A.R.S. § 7-2716.  Id.

12   ¶ 16.  Finally, Plaintiff may be asserting ASCU breached the Agreement by repossessing

13   the vehicle. Id. ¶¶ 4-5.  None of these theories support a viable claim.

14          **1.**   **The ASCU Defendants are not Subject to the FDCPA.**

15           To the extent Plaintiff bases the breach of contract claim on an alleged violation of

16   the FDCPA, his claim should be dismissed because none of the ASCU Defendants are

17   subject to the FDCPA in this matter.[4]  "The FDCPA regulates the collection of 'debts' by

18   'debt collectors' . . . ."  Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1031 (9th Cir.

19   2009).  The ASCU Defendants are not "debt collectors," but "creditors," as those terms

20

21   [3] Defendants note that Plaintiff's "third-party trespass" claim against Wanslee is meritless.  To the extent Plaintiff is attempting to assert Wanslee interfered with a

22   contractual relationship, Wanslee was ASCU's attorney and agent; therefore, she did not interfere with ASCU's contract.  See American Family Mut. Ins. Co. v. Zavala,

23   302 F. Supp. 2d 1108, 1121 (D. Ariz. 2003) (finding "lawyers cannot generally interfere with their clients' contracts"); see also Safeway Ins. Co., Inc. v. Guerrero,106 P.3d 1020,

24   1025 n. 8 (Ariz. 2005) ("Lawyers' advice to *their own clients* to breach a contract already lies outside the general scope of [tort of interference with contractual relations].").

25   [4] The Complaint does not allege the WAR Defendants violated the FDCPA.  See Compl. ¶ 24; id. ¶¶ 6-17.  But to the extent the Court reads the Complaint to include an FDCPA

26   claim against the WAR Defendants, such a claim would fail because WAR is an automobile repossession company whose "principal purpose . . . is the enforcement of

27   security interests."  15 U.S.C. § 1692a(6).  Thus, the WAR Defendants only fall within the FDCPA's definition of "debt collector" for purposes of 15 U.S.C. § 1692f(6), id., and

28   the Complaint does not allege facts supporting a violation of that provision.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  are defined by the FDCPA.  See 15 U.S.C. § 1692a (defining "debt collector"); id.

2  § 1692a(4) (defining "creditor").

3      Plaintiff's own allegations and exhibits establish the FDCPA is inapplicable to

4  ASCU here because ASCU was Plaintiff's creditor and originated the loan in question,

5  serviced the loan before Plaintiff defaulted, and sought to collect Plaintiff's debt on its

6  own behalf.  Rowe, 559 F.3d at ("[A] 'creditor' is not a 'debt collector' under the

7  FDCPA."); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt

8  collector does not include the consumer's creditors, a mortgage servicing company, or an

9  assignee of the debt, as long as the debt was not in default when it was assigned.");

10  Mansour v. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178, 1182 (D. Ariz. 2009)

11  ("Creditors and their fiduciaries are not 'debt collectors' subject to the FDCPA.").

12      Moreover, putting aside the fact that the Complaint fails to allege any FDCPA

13  violations against Doss and Mertyz specifically, both were officers or employees of

14  ASCU.  Thus, any action they took to collect the debt was an attempt to collect on

15  ASCU's behalf.  For these reasons, none of the ASCU Defendants were "debt collectors"

16  in this matter, and Plaintiff's claims based on alleged FDCPA violations should be

17  dismissed.  See Diessner v. Mortg. Elec. Registration Sys., LLC, 618 F. Supp. 2d 1184,

18  1188-89 (D. Ariz. 2009) (affirming dismissal of FDCPA claims under Rule 12(b)(6)

19  because defendant "was not a "debt collector").

20      **2.**    **Plaintiff's Claim that ASCU did not Lend its Capital, Credit, or**
21              **Depositors' Money is Unsupported by Fact and Law.**

22      To the extent Plaintiff alleges ASCU breached the Agreement because it did not

23  lend its capital, credit, or depositors' money, this claim should be dismissed because it is

24  unsupported by fact or law.  As a factual matter, the Agreement attached to the

25  Complaint demonstrates ASCU advanced Plaintiff $19,787.50 and Plaintiff accepted the

26  benefits of that advance.  See Compl. Ex. A.  Moreover, Plaintiff made payments in

27  accordance with the Agreement for approximately one year.  Id. ¶ 4.  By doing so,

28

1    Plaintiff acknowledged the validity of the Agreement, the advance, and the value given in

2    the advance.

3            As a legal matter, it appears Plaintiff may be asserting a "vapor money" theory of

4    relief by arguing ASCU did not loan him legal tender and, therefore, breached the

5    Agreement.  McLaughlin v. CitiMortgage, Inc., --- F. Supp. 2d ----, 2010 WL 2377108,

6    at * 9 (D. Conn. June 11, 2010) (The "vapor money" theory states that 'any debt based

7    upon a loan of credit rather than legal tender is unenforceable.'").  This meritless theory

8    has been uniformly, and resoundingly, rejected by courts as frivolous.  See, e.g., Agra v.

9    Onewest Bank FSB, No. CV 09-3641 PSG (PJWx), 2009 WL 3526585, at *4 (C.D. Cal.

10   Oct. 23, 2009) (unpublished) (dismissing plaintiff's vapor money claim and stating

11   "[c]ourts have uniformly rejected similar claims and even sanctioned pro se litigants for

12   pursuing this 'frivolous' and 'improbable' theory."); Gentsch v. Ownit Mortg. Solutions,

13   Inc., No. CV F 09-0649 LJO GSA, 2009 WL 1390843, at *4-5 (E.D. Cal. May 14, 2009)

14   (unpublished) (dismissing plaintiff's vapor money claim as "meritless" and "absurd");

15   Demmler v. Bank One N.A., No. 2:05-CV-322, 2006 WL 640499, at *3-4 (S.D. Ohio

16   Mar. 9, 2006) (unpublished) (dismissing plaintiff's vapor money claim and characterizing

17   the argument as "patently ludicrous," "utterly frivolous," and "lack[ing] any legal

18   foundation whatsoever").

19           Finally, Plaintiff claims ASCU's purported failure to lend its capital, credit, or

20   depositors' money violates A.R.S. § 47-2716.  Compl. ¶ 16.  Section 47-2716 is a UCC

21   statute granting buyers rights to specific performance or replevin in certain

22   circumstances.  The Complaint fails to allege a cognizable breach of contract claim, let

23   alone grounds for specific performance or replevin.  See A.R.S. § 47-2716 (limiting

24   specific performance and replevin relief to circumstances such as where goods are unique

25   or where, "if after reasonable effort [buyer] is unable to effect cover for such goods").

26   Plaintiff's claims should be dismissed to the extent based on these theories of relief.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

### 3.    The Repossession Did Not Breach the Agreement Because Plaintiff Defaulted on, and Repudiated, the Agreement.

To the extent the Complaint alleges the repossession breached the Agreement, this claim should be dismissed because the facts alleged establish Plaintiff repudiated, and thus defaulted under, the Agreement.  Specifically, the Agreement defines default as any broken promise by Plaintiff, the occurrence of an act ASCU believes might reduce Plaintiff's ability to repay what he owed, or anything that happens that significantly affects the value of ASCU's security interest in the vehicle. Compl. Ex. A at 3.  In the event of default, it provides ASCU "the right to take possession of any property given as security under the Plan, without judicial process, if this can be done without breach of the peace. . . ." Id. at 4; see A.R.S. § 47-9609 ("After default, a secured party . . . [m]ay take possession of the collateral . . . . [w]ithout judicial process, if it proceeds without breach of the peace.").

Exhibit A to the Complaint demonstrates Plaintiff signed the Agreement expressly granting ASCU a security interest in his vehicle.  He acknowledges ASCU advanced $19,787.50, promises to repay all amounts owed with interest, and agrees "to be bound by the terms of the Agreement."  Plaintiff's January 2010 letter, however, repudiated the Agreement in its entirety. Compl., Ex. C.  Plaintiff's repudiation letter constitutes a default under the Agreement.

First, Plaintiff's repudiation constitutes a broken promise to ASCU inasmuch as Plaintiff denies his promises to repay the disputed debt, grant ASCU a security interest in his vehicle, and be bound by the terms of the Agreement.  See also Compl., Ex. E (stating Plaintiff "'rescind[s] chattel mortgages" and he "already clearly did on January 20, 2010 (my Dispute of Debt letter)").  Plaintiff's repudiation of his payment obligations under the Agreement, especially when made within weeks of his skip-a-payment request, also placed him in default because it gave ASCU grounds to reasonably believe Plaintiff's ability to repay his debt was substantially reduced.  Finally, Plaintiff's statements placed him in default of the Agreement because they affected ASCU's security interest in the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

vehicle inasmuch as Plaintiff disputed the debt underlying the security interest and attempted to rescind ASCU's interest in the vehicle.

Additionally, Plaintiff's statements constituted both a breach and repudiation of the Agreement.  In Arizona, "[a]nticipatory repudiation is a form of contract breach in which a party to a contract positively and unequivocally states that he will not perform his obligation pursuant to the contract when the performance becomes due."  Tempe Corp. Office Bldg. v. Ariz. Funding Servs., Inc., 807 P.2d 1130, 1134 n.1 (Ariz. Ct. App. 1991).  Breach by anticipatory repudiation also occurs when a party insists upon terms not contained in a contract.  See United Cal. Bank v. Prudential Ins. Co. of Am., 681 P.2d 390, 431 (Ariz. Ct. App. 1983) ("[I]f one party clearly insists upon a performance to which he is not entitled, that is a repudiation."); see also Restatement (Second) of Contracts § 250 cmt. b ("[L]anguage that under a fair reading 'amounts to a statement of intention not to perform except on conditions which go beyond the contract' constitutes a repudiation" (quoting U.C.C. § 2-610 cmt. 2)).

Here, Plaintiff's letter was an unequivocal statement that Plaintiff refused to meet his contractual obligations.  See  United States Insulation, Inc. v. Hilro Const. Co., Inc., 705 P.2d 490, 497 (Ariz. Ct. App. 1985) (holding description of contract as "null and void" constituted repudiation of contract); cf. Estate of McLane v. Arizona Bd. of Regents, No. 1 CA-CV 07-0857, 2008 WL 5265291, at *5 (Ariz. Ct. App. Dec. 18, 2008) (stating "[o]ne party's refusal to perform under, and denial of the existence of, a contract may constitute repudiation if the other party establishes that the parties had, in fact, entered into a contract" but also stating the "mere denial of [contract] in . . . pleadings does not constitute a repudiation").  Moreover, Plaintiff's insistence that ASCU meet his demands in his debt-dispute letter or surrender any right to its debt was an attempt to require ASCU to meet contractual obligations it had no duty satisfy.  Thus, Plaintiff, not ASCU, breached the Agreement, and Plaintiff's breach of contract claims should be dismissed.

**B.** **Plaintiff's Conspiracy to Commit Theft, Trespass, Theft, and Conversion of Property Claims**

Plaintiff's third, fourth, fifth, and seventh causes of action allege conspiracy to commit theft, trespass,[5] theft, and conversion.  Because theft is a crime, not a tort, Defendants assume Plaintiff is attempting to allege trespass to chattel and/or conversion[6] as grounds for his theft claims.  These overlapping claims should be dismissed.

**1.** **Plaintiff's Conspiracy Claim Fails to Adequately Allege any Agreement to Commit a Tort.**

Plaintiff alleges ASCU and WAR conspired to commit theft when they "entered into (conspired) a contract to take, by any means, without a court order, Plaintiff's [vehicle] from Plaintiff's [p]roperty."[7]  Compl. ¶ 24.  To establish a civil conspiracy claim, a plaintiff must prove an "an actual agreement, proven by clear and convincing evidence," <u>Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund</u>, 38 P.3d 12, 37 (Ariz. 2002), and "an underlying tort which the alleged conspirators agreed to commit," <u>Baker v. Stewart Title & Trust of Phoenix, Inc.</u>, 5 P.3d 249, 259 (Ariz. Ct. App. 2000).

Plaintiff's conspiracy claim fails for multiple reasons.  First, there is no factual support for Plaintiff's bare allegation that ASCU and WAR agreed to repossess his vehicle by "any means."  <u>See</u> <u>Siemer v. Assocs. Fin. Servs., Co.</u>, 1998 U.S. Dist. Lexis 23250, at *56-57 (D. Ariz. Mar. 23, 1998) (unpublished) ("[C]onclusory or bare allegations are not sufficient to state a conspiracy claim.").

[5] Because Plaintiff asserts a broad conspiracy allegation and alleges trespass in conjunction with his theft claim, <u>see</u> Compl. § 30, Defendants address Plaintiff's trespass claim in relation to his conspiracy claims.

[6] For purposes of this motion, Defendants and the Court do not need to distinguish between the torts of trespass to chattel and conversion.  Both involve interference with possessory interests in property, and they are distinguished based on the degree of interference and remedy appropriate.  <u>See</u> <u>Sports Imaging of Ariz., L.L.C., v. CKC Trust</u>, No. 1 CA-CV 05-0205, 2008 WL 4448063, at *25 & n. 42 (Ariz. Ct. App. Sept. 30, 2008) (unpublished).

[7] Plaintiff also appears to assert an FDCPA claim against ASCU in this cause of action.  For reasons stated above, the FDCPA is inapplicable to ASCU in this matter, so Plaintiff's assertion fails to state a claim upon which relief can be granted.  Compl. ¶ 24.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Second, even if Plaintiff could somehow establish ASCU had no right to repossess Plaintiff's vehicle, there is no allegation WAR or its employees had sufficient knowledge such that they contracted with ASCU to commit a tort.  As Arizona courts have recognized, "[t]here is a qualitative difference between showing an *agreement* to participate in a tort (conspiracy) and a knowing action which might substantially aid the tortfeasor to commit a tort."  Wells Fargo, 38 P.3d at 37.  Moreover, while "[a] conspiracy may be established by circumstantial evidence through the nature of the acts, the relationship of the parties, the interests of the conspirators, or other circumstances," Dawson v. Withycombe, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007), "[m]ere suspicious cooperative activity between the alleged conspirators may not amount to clear and convincing evidence of an actual agreement to participate in tortuous conduct," id. at 1054.  Thus, the mere fact that WAR repossessed Plaintiff's vehicle provides no grounds from which the Court can "infer a conspiratorial agreement" existed between ASCU and WAR.  Wells Fargo Bank, 38 P.3d at 37.[8]

Finally, Plaintiff's conspiracy claim fails because Plaintiff cannot establish a tort was committed.  As set forth below, no Defendant committed conversion, trespass to chattel, or trespass.

### 2.    Defendants did not Commit Trespass to Chattel or Conversion.

Plaintiff's third, fifth, and seventh causes of action allege theft- and conversion-related claims based on the repossession and sale of Plaintiff's vehicle.  To the extent Plaintiff alleges ASCU committed trespass to chattel or conversion, his claims fail because he consented to the repossession and sale of the vehicle in the Agreement, and Arizona law allows secured creditors to repossess collateral upon default. See A.R.S. § 47-9609; Restatement (Second) of Torts § 272 ("One who is entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it."); Koepnick v. Sears Roebuck & Co., 762 P.2d 609, 617 (Ariz. Ct. App. 1988) ("Arizona courts follow

---

[8] To the extent Plaintiff would argue ASCU and WAR conspired to commit trespass, Plaintiff's claim would likewise fail because Plaintiff fails to allege ASCU agreed to allow WAR to engage in such conduct.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

the Restatement (Second) of Torts absent authority to the contrary."). Indeed, Arizona courts have stated secured creditors are entitled to immediate possession of collateral when a debtor defaults. See Sears Consumer Fin. Corp. v. Thunderbird Prods., 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990). They have also stated that, "[t]o maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." Case Corp. v. Gehrke, 91 P.3d 362, 365 (Ariz. Ct. App. 2004).

Here, Plaintiff defaulted under the Agreement. Accordingly, ASCU had contractual and statutory rights to immediate possession of the vehicle, and Plaintiff has no standing to assert a conversion claim.[9]

### 3.    John Doe 1 did not Trespass on Plaintiff's Property.

To the extent Plaintiff is asserting a trespass[10] claim related to John Doe 1, Tow Truck Driver, see Compl. § 30, this claim should be dismissed because John Doe 1 had statutory authority, and contractual permission, to repossess Plaintiff's vehicle if he did so without breaching the peace, as was the case here.

In the event of default, Arizona law allows secured parties to repossess collateral without judicial process if they can do so without "breach of the peace." A.R.S. § 47-9609. This right to repossession allows secured creditors to enter debtors' properties to remove collateral, or in other cases, to simply disable collateral and dispose of it without removal. Id.; U.C.C. § 9-609 cmt. 6. The Agreement specifically acknowledged this by stating ASCU "ha[d] the right to take possession of any property given as security . . . without judicial process, if this can be done without breach of the peace." Compl., Ex. A

---

[9] Additionally, to the extent Plaintiff asserts trespass to chattel or conversion claims against any of the remaining ASCU Defendants or WAR Defendants, Plaintiff's claims also fail. ASCU's repossession privilege extended to their agents. See, e.g, Restatement (Second) of Torts § 272 cmt. c ("The rule stated in this Section is applicable to afford a privilege to one who acts as an agent under the authority of the person entitled to the immediate possession of the chattel.").

[10] Plaintiff also asserts trespass as his fourth cause of action because ASCU failed to respond to his letters and to a third party witness. Compl. § 26-28. It is unclear how that allegation supports a trespass claim. To the extent Plaintiff might be trying to assert an FDCPA violation against ASCU, that claim fails for reasons already stated.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

at 4. Thus, no trespass occurred if John Doe 1 repossessed Plaintiff's vehicle without breaching the peace. See <u>Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc.</u>, 613 P.2d 1283, 1286 (Ariz. Ct. App. 1980).

Arizona law does not define "breach of the peace" for repossession purposes. See U.C.C. § 9-609 cmt. 3 (2002). Instead, Arizona courts have observed "the facts of each individual case must be evaluated to determine if a breach of the peace has occurred." <u>Griffith</u>, 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980). Breaches of peace typically occur when there is confrontation between parties, property damage, physical violence, resistance to repossession, or entry of a closed dwelling. See <u>Bryant v. Cook County Investigators</u>, No. 09-cv-5344, 2010 WL 1610392, at *2 (N.D. Ill. Apr. 15, 2010) (unpublished); <u>Pflueger v. Auto Fin. Group, Inc.</u>, No. CV-97-9499 CAS(CTX), 1999 WL 33740813, at *6 (C.D. Cal. Apr. 26, 1999) (unpublished); <u>Rainwater v. Rx Med. Servs. Corp.</u>, No. CV-95-5596-REC, 1995 WL 907888, at *6 (E.D. Cal. Dec. 6, 1995) (unpublished); <u>Stone Machinery Co. v. Kessler</u>, 463 P.2d 651, 653-55 (Wash. Ct. App. 1970).

Here, Plaintiff does not, and cannot, allege a breach of the peace. Indeed, by Plaintiff's own allegations, the repossession in this matter was done so peacefully that Plaintiff is unsure as to both the time the repossession occurred and the identity of the WAR employee who conducted the repossession. Accordingly, there are no grounds for a trespass claim.

**C.    Plaintiff's Usury Claim**

Count Six alleges usury because ASCU "charged interest on Plaintiff's credit." Compl. ¶ 32. Arizona law, however, provides that "[i]nterest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." A.R.S. § 44-1201(A). ASCU, therefore, could not have committed usury by charging interest on Plaintiff's credit because charging interest is permissible. Moreover, to the extent Plaintiff is attempting to allege ASCU's interest rate was too high, the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

parties agreed to their interest rate in writing, and a 4.75 percent interest rate is below the amount allowed by law. Accordingly, there are no grounds for a usury claim.

### D.   Plaintiff's Extortion Claim

Count Eight alleges extortion. To support this claim, Plaintiff alleges ASCU sent him a letter "demanding $7,542.00 and admitting that [ASCU] had converted $9,600.00 received from the sale of Plaintiff's property (automobile) by claiming a deficiency in the alleged account."[11] Compl. ¶ 37.

Plaintiff cites no law, and Defendants find none, establishing a civil cause of action for extortion in Arizona. Moreover, the Agreement contractually obligated Plaintiff to pay the difference between the amount realized from the sale of the vehicle and the remaining balance due. See Compl., Ex. A at 3. Thus, Plaintiff's claim should be dismissed for failing to state a claim upon which relief can be granted. Kennedy Ship & Repair, L.P. v. Loc Tran, 256 F.Supp.2d 678, 686 (S.D. Tex. 2003) (dismissing civil extortion claim where no authority that Texas recognized such a cause of action).

### E.   Plaintiff's Libel and Malice Claims

Counts Nine and Ten allege libel and malice. Plaintiff alleges ASCU committed libel by reporting to credit bureaus that it had "charged off" Plaintiff's loan, Compl. ¶ 39, and to the Internal Revenue Service that it was "the Payer on a 1099 OID Credit and the Plaintiff was the recipient," id. ¶ 40. As support for Plaintiff's malice claim, Plaintiff asserts "Defendant[s] actions were intentional to do the particular kind of harm that in fact was done to Plaintiff," id. ¶ 42, and "Defendant[s] foresaw that the particular kind of harm noted above might be done and yet has gone [sic] on to take the risk of it," id. ¶ 43.

#### 1.   There is no Civil Cause of Action for Malice.

Plaintiff's malice claim should be dismissed because Plaintiff provides no authority, and Defendants find none, establishing the existence of a civil action for "malice" in Arizona, or elsewhere. To the extent Plaintiff's claim is attempting to

---

[11]  ASCU denies it "converted" Plaintiff's property. As stated above, Plaintiff's conversion claim is meritless.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

establish a state-of-mind element for his other tort claims, those claims fail for reasons stated elsewhere in this brief.

**2.      Plaintiff's Libel Claim is Preempted by Federal Law.**

To the extent Plaintiff claims ASCU libeled him by reporting to credit bureaus that it had "charged off" Plaintiff's loan, Plaintiff's claim is preempted by federal law and should be dismissed.  The Fair Credit Reporting Act ("FCRA") prohibits furnishers of credit information from providing information they "know[] or ha[ve] reasonable cause to believe . . . is inaccurate," 15 U.S.C. §1681s-2(a)(1), and subjects creditors to civil liability for willful or negligent violations of that provision;  id. §§ 1681n; 1681o.

The FCRA contains two provisions that preempt additional state statutory and common law claims against furnishers of information that arise out of conduct related to their credit reporting.[12]  First, Section 1681h(e) of the FCRA, enacted in 1970, provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

See 15 U.S.C. § 1681h(e).  Second, Section 1681t(b)(1)(F), enacted in 1996, provides:

> No requirement or prohibition may be imposed under the laws of any State . . .
>
> (1)      with respect to any subject matter regulated under . . .
>
> (F)      section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

See 15 U.S.C. § 1681t(b)(1)(F).

---

[12] Two distinct Minnesota and California state statutory claims are exempted from this preemption provision, neither of which is at issue in the instant matter.  See 15 U.S.C. § 1681t(b)(1)(F)(i) & (ii) (2009).

1    Admittedly, the interaction of the FCRA's two preemption statutes has caused
2    some difficulty for courts.  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147,
3    1165-66 (9th Cir. 2009) (discussing split of authority regarding interpretation of statutes
4    and declining to rule on issue).  The majority of courts within the Ninth Circuit that have
5    addressed the issue have concluded that the plain language of Section 1681t(b)(1)(F), the
6    later-enacted statute, preempts all state statutory and common law claims arising out of
7    conduct proscribed by Section 1681s-2 (such as reporting of credit information).  See
8    Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, 536 F. Supp. 2d 1207, 1214-
9    15 (E.D. Cal. 2008); Cope v. MBNA American Bank, No. 04-CV-493-BR, 2006 WL
10   655742, at *8-9 (D. Or. Mar. 8, 2006) (unpublished); Royal v. Equifax, No.
11   2:05CV1207-MCE-KLM, 2006 WL 902276, at *3-4 (E.D. Cal. Apr. 04, 2006)
12   (unpublished); Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181-82 (E.D. Cal. 2005);
13   Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1143 (N.D. Cal. 2005); Davis v.
14   Maryland Bank, No. 00-04191, 2002 WL 32713429, at * 11-15 (N.D. Cal. June 19, 2002)
15   (unpublished).  A minority of courts, however, have held § 1682t(b)(f) does not prohibit
16   defamation suits alleging falsity and malice because "§ 1682h(e) suggests that
17   defamation claims can proceed against creditors as long as the plaintiff alleges falsity and
18   malice."  Gorman, 584 F.3d at 1166; see Home Care Servs., Inc. v. Advanta Bank Corp.,
19   No. 09-CV-2518-PHX-GMS (D. Ariz. June 15, 2010).

20   Here, the Court should apply the majority view and find Plaintiff's libel claim
21   preempted by the FCRA to the extent it relies on allegations related to ASCU's reporting
22   to credit bureaus.  As recognized by the court in Davis, 2002 WL 32713429, at *13, the
23   plain language of § 1681t(b)(1)(F) supports this approach because it specifically prohibits
24   state laws from imposing requirements or prohibitions "with respect to any subject matter
25   regulated under . . . section 1681s-2," which specifically addresses the conduct Plaintiff
26   apparently claims led to libel.  15 U.S.C. § 1681t(b)(1)(F) (emphasis added).  Moreover,
27   Congress enacted §1681t(b)(1)(F) "in order to create a uniform scheme governing the
28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

disclosure of credit information," <u>Davis</u>, 2002 WL 32713429, at *13, and reading § 1682t(b)(1)(F) to preempt claims such as Plaintiff's furthers that purpose.

To the extent the Court would, however, find defamation claims alleging falsity and malice may proceed under § 15 U.S.C. § 1681h(e), the Court should still find Plaintiff's libel cause of action preempted because it is inadequately pled.  In <u>Gorman</u>, the Ninth Circuit Court of Appeals held "malice" under the FCRA requires a publication made "with knowledge that it was false or with reckless disregard of whether it was false or not."  <u>Gorman</u>, 584 F.3d at 1168.  It further stated that, "to show 'reckless disregard,' a plaintiff must put forth 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'"  <u>Id</u>. (quoting <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968)).

Here, there is no support for an allegation that ASCU gave information it knew was false or that ASCU entertained any doubts about the truth of its statements. Furthermore, there is a complete lack of an assertion that ASCU's statements were false. Accordingly, to the extent Plaintiff bases his libel claim on facts related to ASCU's credit reporting, Plaintiff's claim is preempted and should be dismissed.

### 3.     Plaintiff's Libel Claim is Insufficiently Pled.

Finally, to the extent Plaintiff's claim relies on any allegation not preempted by the FCRA, Plaintiff's claim should be dismissed because it fails to allege sufficient facts. In Arizona, "[o]ne who publishes a false and defamatory communication concerning a private person ... is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them."  <u>Dube v. Likins</u>, 167 P.3d 93, 104 (Ariz. Ct. App. 2007).

Here, the Complaint does not allege, and the facts do not support, that ASCU's alleged statements were false.  Further, there is no support for an assertion ASCU made any statements knowing them to be false, with reckless disregard as to whether they were

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  false, or after negligently failing to ascertain whether they were false.   Accordingly,

2  Plaintiff's libel cause of action should be dismissed.

3      **F.**      **Plaintiff's Fraud Claim**

4      Count 11 alleges common law fraud against ASCU.   Though unclear, it appears

5  Plaintiff again asserts ASCU represented that it loaned Plaintiff money but did not

6  actually do so (the "vapor money" theory).    This cause of action should be dismissed

7  because it is insufficiently pled, unsupported by fact, and unsupported by law.

8      Pursuant to Rule 9(b), Fed. R. Civ. P., to state claim for fraud, Plaintiff must allege

9  all nine elements of fraud with particularity.   <u>See</u> Fed. R. Civ. P. 9(b); <u>Enyart v.</u>

10  <u>TransAmerica Ins. Co.</u>, 985 P.2d 556, 562 (Ariz. Ct. App. 1998).   The Complaint fails to

11  adequately allege a common law fraud claim against any defendant and should be

12  dismissed.

13  **V.**   **CONCLUSION**

14      Based on the foregoing, the ASCU and WAR Defendants respectfully request the

15  Court grant this motion in its entirety and dismiss the Complaint as against them, with

16  prejudice, for failing to state a claim upon which relief can be granted.

17      DATED this 20th day of August, 2010.

18                          SNELL & WILMER L.L.P.

19                  By:    *s/Daniel W. Huitink*
20                          Jennifer Hadley Dioguardi (#018380)
                            Daniel W. Huitink (#026276)
21                          One Arizona Center
                            400 E. Van Buren
22                          Phoenix, AZ  85004-2202
                            Attorneys for Defendants Arizona State Credit
23                          Union, David E. Doss, Dominic Mertyz, and
                            Western Auto Recovery, Inc., Jeffrey Billings,
24                          and John Doe 1, Tow Truck Driver

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1

## **CERTIFICATE OF SERVICE**

2

3       I hereby certify that on the 20th day of August, 2010, I electronically transmitted

4 the attached document to the Clerk's Office using the CM/ECF System for filing.

5       I hereby certify that on the 20th day of August, 2010, I served the attached

6 document by United States Postal Service on the following, who is not a registered

7 participant of the CM/ECF System.

8

9            Allan J. Ricks, *pro per*
             2335 E Pueblo Avenue
10           Mesa, AZ  85204
             480-892-5571
             rixajr@gmail.com

11

12                    *s/Debbie Shuta*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000